IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JACKIE J. LEBOUEF, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 1:07cv213-CSC |
| | )               (WO) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
|    Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Jackie J. Le Bouef ("Le Bouef"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Le Bouef then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Pursuant

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Le Bouef was 43 years old at the time of the hearing before the ALJ. (R. 178.) She is a high school graduate. (*Id.*) Le Bouef's prior work experience includes working as a home health aide, certified nurse aide, fabric store sales clerk, and an appointment clerk. (R. 65, 74, 179.) Le Bouef alleges that she became disabled on April 1, 2004, due to degenerative cervical disc disease, back and neck pain, fibromyalgia, rheumatoid arthritis, ulcers, anemia, high cholesterol, and acid reflux. (R. 73, 181.) Following the hearing, the ALJ concluded

---

authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

that Le Bouef's impairments are not severe. (R. 22, 25.) Accordingly, at Step Two of the sequential analysis the ALJ concluded that Le Bouef is not disabled. (R. 25.)

## IV. The Plaintiff's Claims

As stated by Le Bouef, she presents the following issues for the court's review:

1. The Commissioner's decision should be reversed, because the ALJ committed reversible error when he denied her claim at step two of the sequential evaluation process.

2. The Commissioner's decision should be reversed, because the ALJ erred in evaluating her testimony concerning the limitations imposed by her impairments.

3. The Commissioner's decision should be reversed, because the ALJ erred by rejecting the medical opinions expressed by Dr. Harrelson.

4. The Commissioner's decision should be reversed, because the ALJ substituted his "medical opinion" for the medical opinion of Le Bouef's treating physician.

(Doc. No. 11 at R. 8-9.)

## V. Discussion

Le Bouef raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of Le Bouef's specific arguments because the court concludes that the ALJ erred as a matter of law, and, thus, this case is due to be remanded for further proceedings. Specifically, the court concludes that the ALJ erred at Step Two of the sequential evaluation. In addition, the court concludes that the ALJ failed to conduct a proper

credibility analysis.

Social security disability proceedings are inquisitorial rather than adversarial. *See Sims v. Apfel*, 530 U.S. 103 (2000); *Richardson v. Perales*, 402 U.S. 389 (1971).

> Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative judge to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citation omitted).

*Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

The ALJ did not properly consider whether the plaintiff's pain or any of her medical conditions, including fybromyalgia, constitute severe impairments. The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The plaintiff has the "burden of showing that [her] impairments are 'severe'

within the meaning of the Act." *McDaniel*, 800 F.2d at 1030-31. Once the plaintiff establishes that she suffers from a severe impairment, the ALJ is not entitled to ignore that evidence.

In this case, the ALJ concluded that "[s]ince the claimant has not established the presence of a 'severe' impairment, or combination of severe impairments, she has not met her burden at the second step of the sequential evaluation." (R. 25.) In reaching his conclusion, the ALJ specifically found that Le Boeuf's impairments were "not severe" because her "allegations [of various symptoms, including pain] cannot be considered credible" and

> . . . The medical evidence . . . clearly verifies that the claimant's alleged and diagnosed impairments do not pose restrictions in her ability to successfully perform the demands of work and work-like activities. Data gleaned from physical examinations, and diagnostic studies does not reveal the presence of even minimal limitations resulting from the claimant's alleged and diagnosed impairments; as such, the claimant's impairments cannot be considered "severe" under the Act. There is glaring absence of radiographic studies, laboratory analyses and diagnostic evaluations establishing any significant disease process that could reasonably be expected to inhibit the claimant's mental or physical functional capacity.

(R. 24-25.)

The medical records indicate that Le Bouef suffers from a variety of medical conditions. In March 2004, Le Bouef presented to Dr. Rick A. Harrelson, an internist, complaining of a headache, neck and back pain, and a tingling sensation radiating down both shoulders. (R. 143-44.) Dr. Harrelson prescribed Robaxin for Le Bouef's complaints of neck and shoulder pain. (R. 144.) During a follow-up exam, Dr. Harrelson assessed that Le Bouef suffered from hyperlipidemia, mechanical back pain, degenerative cervical disc, and migraine

6

headaches. (R. 134.) The internist prescribed Celebrex and recommended that Le Bouef continue taking Robaxin. (*Id*.)

On April 12, 2004, Le Bouef reported back pain and was prescribed 60 tablets of Darvocet. (R. 132.) On April 27, 2004, Dr. Harrelson noted that Le Bouef complained of "ongoing back and neck pain despite Celebrex/Darvocet/Robaxin" and suffering from a fever and chills the previous night. (R. 130.) On July 29, 2004, Dr. Harrelson assessed that Le Bouef suffers from mechanical back and neck pain, fibromyalgia, headaches, and depression. (R. 125.) Dr. Harrelson specifically noted that Le Bouef had "mult[iple] tender spots" and prescribed Lortab to be taken twice a day.[4] (*Id*.) On November 30, 2004, Le Bouef presented to Dr. Harrelson with complaints of suffering from a fever in the evening and back and neck pain. (R. 121.) During a follow-up appointment on December 15, 2004, Le Bouef reported back pain and that she had a fever the previous Sunday. (R. 113.)

On September 26, 2005, Le Bouef presented to Dr. Harrelson with complaints of back, neck, and hip pain and reported that she was "still having chills/fever." (R. 158.) Dr. Harrelson assessed that Le Bouef suffers from several conditions, including fibromyalgia, back pain, radiculopathy, and headaches, increased Le Bouef's dosage of Lortab, and renewed all of her prescriptions. (R. 159.) The next day, a physician conducted an MRI of Le Bouef's lower spine and found "minimal disc space narrowing at L3-4, L4-5, and L5-S1 with desiccation of the discs demonstrated" and "cyst-like defects . . . along the lower sacral level appearing to represent benign findings." (R. 160.)

---

[4] Dr. Harrelson prescribed five refills of 60 tablets of Lortab. (R. 125.)

Although the ALJ found that "[d]ata gleaned from physical examinations and diagnostic studies does not reveal the presence of even minimal limitations" and that there is a "glaring absence of radiographic studies, laboratory analyses, and diagnostic evaluations establishing any significant disease process," the medical records indicate that Dr. Harrelson diagnosed Le Bouef as suffering from fibromyalgia on at least two occasions, specifically noting that she had several tender points, and that he routinely prescribed pain medication for her complaints of back, neck, and shoulder pain since 2004. The causes of fibromyalgia "are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Reliford v. Barnhart*, 444 F.Supp. 2d 1182, 1186 (N.D. Ala. 2006), *citing Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996). There are no laboratory tests which test for the presence or severity of fibromyalgia. *Id.*

Furthermore, Dr. Harrelson's medical diagnoses indicate that Le Bouef suffers from fibromyalgia. *Cf. Wiley v. Astrue*, No. 8:06cv1178-T-EAJ, 2007 WL 2208827, *4 (M.D. Fla. July 27, 2000) (where ALJ found only references to a history of fibromyalgia in the medical records, ALJ declined to find that condition as a basis for her complaints of severe chronic pain, absent an evaluation from a rheumatologist). *But see Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 693, 696 (11th Cir. 2006) (medical records from treating physician and rheumotologist indicated that claimant had severe impairments of fibromyalgia, but that she did not have an impairment that met or equaled a Listing at Step Three of the sequential evaluation); *Morrison v. Barnhart*, 278 F.Supp.2d 1331, 1334-35 (M.D. Fla. 2003) (where rheumatologist found multiple tender points and diagnosed plaintiff as suffering from

fibromyalgia, the ALJ concluded that the plaintiff's condition was a severe impairment, but not severe enough to meet or equal a listed impairment).

The court notes that, when determining that Le Boeuf's impairments are not severe, the ALJ placed great emphasis on the fact that Le Bouef failed to appear for a musculoskeletal consultative examination on or around July 9, 2004. (R. 22.) Le Boeuf's written request for a hearing, however, indicates that Le Boeuf did not attend the consultative examination because her "mother was critically ill in [the] hospital and passed away on 07-12-04." (R. 35.) It is apparent from the record that the ALJ did not inquire about Le Bouef's failure to show for her consultative examination or order further evaluations or testing to determine the extent of Le Bouef's musculoskeletal or inflammatory condition. The ALJ has a duty to fully and fairly develop the record. *See*, *e.g*., *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990); *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). The ALJ must conscientiously probe into, inquire of, and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981). In light of evidence indicating that Le Bouef has suffered from headaches, back and neck pain, stiffness in the morning, tender points, and other symptoms indicative of fybromyalgia, this court concludes that the ALJ erred in failing to order an additional evaluation and relying on the lack of testing to support his conclusion that Le Boeuf's medical condition is not severe.

In addition, the ALJ failed to make an informed decision with respect to Le Boeuf's allegation that she suffers from rheumatoid arthritis. In his analysis, the ALJ stated that testing for rheumatoid arthritis was negative. (R. 23.) The medical records indicate that, in

9

December 2004, Le Bouef's rheumatoid arthritis factor was normal and that her anti-nuclear antibodies were negative; however, test results also indicate that her erythrocyte sedimentation rate (ESR) was high.[5]  (R. 116-17.)  While an elevated rheumatoid arthritis factor is one indicator of rheumatoid arthritis, *see Peterson v. Barnhart*, 219 F.Supp. 2d 491 (S.D.N.Y. 2002), a high ESR is also a non-specific indicator of inflammatory diseases, including rheumatoid arthritis.  *Id.*  Thus, a high ESR is an indicator of rheumatoid arthritis or other inflammatory process which is obviously a condition which can cause severe pain.  *See*, *e.g.*, *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 246 (6th Cir. 2007) (describing an elevated ESR as a finding consistent with rheumatoid arthritis).  *Cf. Watson v. Heckler*, 738 F.2d 1169, 1172-73 (11th Cir. 1984) (determining that, although claimant was diagnosed by both an orthopedist and a rheumatologist with rheumatoid arthritis, ALJ did not improperly require objective medical findings to support pain testimony or err in finding that claimant could perform light work at Step Four, given the claimant's use of pain-killers, her failure to seek treatment, and her daily activities).  While an elevated ESR is a non-specific finding, H.C. Sox, Jr. & M.H. Liang, *The Erythrocyte Sedimentation Rate: Guidelines for Rational Use*, 104 Ann. Intern. Med. 515-23 (1986), the very fact that Le Bouef received a high ESR indicates further inquiry is necessary.  *See Lucas*, *supra*; *Cowart, supra*.

Because the ALJ misapplied the test when determining whether Le Bouef suffers from any severe impairments under Step Two of the evaluation process, this court is unable to

---

[5] In addition, there are several references to unexplained fevers throughout the record. (R. 113-14, 133, 158.)

determine whether the ALJ's conclusion that Le Bouef is not disabled is supported by substantial evidence.

The court also concludes that the ALJ failed to conduct a proper credibility analysis. Le Boeuf complains that the ALJ did not find her fibromyalgia or other conditions to be severe impairments because he failed to properly evaluate and credit her subjective complaints of pain. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is <u>itself</u> sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry, supra*.

During the hearing before the ALJ, Le Boeuf testified that she suffers from pain which radiates from her neck and down her back and daily muscle spasms. (R. 181-82.) Le Boeuf described her back pain as "somebody taking a rubber band and just twisting and twisting until they just can't twist anymore." (R. 182.) In addition, she stated that she suffers from numbness in her left leg at least once a week, that her husband must help her out of bed in the

morning, and that back pain wakes her in the evening. (R. 181, 184.) Le Boeuf also testified that, in order to get comfortable, she must "lay on [her] couch with a heating pad and take [her] pain pills and muscle relaxers." (R. 183.) The ALJ, however, concluded that Le Bouef's allegations of pain could not be considered credible due to the following reasons:

> The claimant alleged having fever several times; however, on each examination, her temperature was within the normal range. It is also noteworthy that the claimant has not been referred to a pain clinic. *Cf. Arnold v. Heckler*, 732 F.2d 881 (11th Cir. 1984). Furthermore, Dr. Harrelson, the claimant's treating physician, reports that the claimant has back and neck pain and fibromyalgia. However, Dr. Harrelson's examinations for the most part are within normal limits. Only once does he report multiple tender points. However, he did not report how many tender points the claimant had, and did not report them again. Dr. Harrelson only listed fibromyalgia as a diagnosis on 2 occasions. Furthermore, Dr. Harrelson only reported decreased range of motion of the lumbosacral spine on one occasion and then did not tell how limited she was. Two bone scans were normal, and a MRI of the lumbar spine showed only minimal lumbar spondylosis with only slight disc degeneration. There was no definite disc herniation or spinal stenosis, and only benign cyst-like defects at the sacral level. Therefore, Dr. Harrelson's opinions of the claimant's pain and her functional limitations previously mentioned were apparently the result of Dr. Harrelson relying quite heavily on the subjective report of symptoms and limitations provided by the claimant that he seemed to uncritically accept as true. While the claimant may experience some symptoms from her alleged and diagnosed impairments, it is not credible that she experiences the level of such symptomatology to the extent alleged. *Arnold v. Heckler*, *supra*.

First, the ALJ's determination that Le Bouef's reports of fevers should not be credited because the medical records indicate that she did not suffer from a fever is a mischaracterization of the evidence. Although medical documentation indicates that Le Bouef's

12

temperature was usually in the normal range during office visits, there is no evidence indicating that Le Bouef did not suffer from a fever during the days or evenings prior to her scheduled appointments. For example, Dr. Harrelson's notes indicate that, on April 27, 2004, Le Boeuf reported suffering from fever and chills the previous Saturday evening and ongoing back and neck pain. (R. 130.) On November 30, 2004, Le Boeuf reported suffering from a fever at night, as well as back and neck pain. (R. 121.) At the time of her appointment, Le Boeuf also had a low-grade fever of 99 degrees.[6] (*Id.*) On December 15, 2004, Le Boeuf reported having a fever of 101 degrees the previous Sunday and that she "ache[d] all over when [her] fever [was] up." (R. 113.) On September 26, 2005, Le Bouef reported that, in addition to neck, back, and hip pain, she continued to suffer from fever and chills. (R. 158.) Nothing in the record indicates that Le Bouef reported the onset of a fever on the day of her scheduled appointments.

The court is likewise puzzled by the ALJ's finding that Le Bouef's allegations of pain should not be credited because she failed to seek treatment at a pain clinic. While there is no evidence that Le Boeuf went to a pain clinic, the record indicates that Dr. Harrelson has treated Le Bouef for her complaints of pain on a routine basis since 2004 and that he has consistently prescribed Lortab, Darvocet, and other pain medication to treat Le Boeuf's symptoms. Thus, Dr. Harrelson provided Le Boeuf with pain management treatment, and the court has no reason to believe that he lacked the competence to do so.

---

[6] Thus, the ALJ's determination that Le Boeuf did not suffer from a fever during office visits is inconsistent with medical records indicating that she suffered from a low-grade fever during an examination in November 2004.

Because the ALJ failed to properly consider Le Bouef's subjective complaints of pain and that further inquiry is necessary concerning Le Boeuf's inflammatory conditions, the court cannot conclude that the ALJ's finding that Le Boeuf's medical condition is not severe within the meaning of the regulations is supported by substantial evidence. Thus, this case be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order will be entered.

Done this 19th day of November, 2007.

                                         /s/Charles S. Coody
                                   CHARLES S. COODY
                                   CHIEF UNITED STATES MAGISTRATE JUDGE